UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REYNALDO SALINAS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00804-SEB-TAB |
| | ) | |
| SAVINO Dr., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

This action is based on Reynaldo Salinas's allegations that Dr. Yoko Savino violated his Eighth Amendment rights by delaying surgery to repair nerve damage in his left arm. Dr. Savino moved for summary judgment. Because undisputed evidence demonstrates that she was not deliberately indifferent to Mr. Salinas's medical condition, Dr. Savino's motion is granted, and this action is dismissed with prejudice.

**I. Legal Standard**.

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not

"scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. Facts

Mr. Salinas was robbed and stabbed in the left arm in 2018, before he was incarcerated. He underwent an operation and was scheduled for a follow-up surgery, but he was arrested before it took place. Dkt. 49-3 at 6, 18:13–19:19. He requested surgery while he was in county jail and after he entered the Indiana Department of Correction's (IDOC) Reception and Diagnostic Center but was denied. *Id.* at 7–8 (25:18–26:5).

After being transferred to the Correctional Industrial Facility (CIF), Mr. Salinas submitted a request for healthcare form on December 15, 2020, stating:

> I'm still having pain in my arm, the medicines you have given me do not work. I have nerve damage. I can't use my arm. I can't lose weight. We don't have rec. I need an opperation [*sic*].

Dkt. 49-1 at 1. Medical records documenting Mr. Salinas's condition and treatment before December 15, 2020, are not in the record.

Dr. Savino examined Mr. Salinas five months later. Dkt. 49-1 at 2–4. No evidence indicates that she interacted with Mr. Salinas or his medical records before that encounter on May 17, 2021.

2

Dr. Savino documented that Mr. Salinas was suffering from "wrist drop" and could not use his left hand "at all." Dkt. 49-1 at 2. The Court understands this to mean that Mr. Salinas had a radial nerve injury that caused his left hand to "hang[] flaccidly." *See* Alexei DeCastro & Patrick Keefe, *Wrist Drop* (July 17, 2023), https://www.ncbi.nlm.nih.gov/books/NBK532993/.[1] Dr. Savino prescribed a medication and noted that she would request approval of an MRI for Mr. Salinas's left arm and hand. Dkt. 49-1 at 3–4.

On May 18—the very next day—Dr. Savino requested approval for Mr. Salinas to be sent outside the prison for an MRI. Dkt. 49-1 at 5–9. She noted Mr. Salinas's initial stab wound, that he was scheduled for an additional procedure before his arrest, and that his injury left him unable to use his left hand, making it difficult to put on socks, tie shoes, and wash himself. *Id.* at 6.

On May 20, Dr. Michael Mitcheff deferred Dr. Savino's request. Dkt. 49-1 at 10. Dr. Mitcheff indicated that additional information was necessary to determine whether an MRI was appropriate, including whether Mr. Salinas's condition had worsened over time, whether his arm muscles had atrophied, and whether he had been vaccinated against COVID-19. *Id.*

Dr. Savino saw Mr. Salinas again on June 11, 2021, presumably to obtain the information Dr. Mitcheff demanded. Dkt. 49-1 at 11–13. She secured Mr. Salinas's written consent to obtain his pre-incarceration medical records, verified that his vaccinations were up-to-date, and confirmed that his left arm was smaller than the right, indicating atrophy. *Id.* at 13.

Dr. Savino obtained Mr. Salinas's pre-incarceration medical records and updated her MRI request on June 17, 2021. Dkt. 49-1 at 16. She provided all the information Dr. Mitcheff requested and Mr. Salinas's complete medical records. *Id.* at 16, 21. On June 21, Dr. Mitcheff again deferred

---

[1] Attorneys for medical professionals should not assume that judges are familiar with the medical conditions and procedures at issue in their cases. In the future, counsel for Dr. Savino should consider using summary judgment briefs to provide basic, layperson's definitions of medical terminology. Leaving the Court to obtain such information on its own reduces counsel from an advocate to a transcriber of medical records.

3

his approval and instructed Dr. Savino to resubmit the request with records from Mr. Salinas's postsurgical follow-up appointment. *Id.* at 21, 25.

Dr. Savino promptly resubmitted her MRI request and explained that there were no records from a postsurgical follow-up appointment because Mr. Salinas was arrested before that appointment could take place. *Id.* at 25. Dr. Mitcheff again deferred the request on June 24 and instructed Dr. Savino to obtain Mr. Salinas's consent to undergo an electromyogram and nerve conduction study. *Id.* The Court understands that an electromyogram "is a diagnostic procedure to assess the health of muscles and the nerve cells that control them" and "can reveal nerve dysfunction, muscle dysfunction or problems with nerve-to-muscle signal transmission." Mayo Clinic, *Electromyography (EMG)*, https://www.mayoclinic.org/tests-procedures/emg/about/pac-20393913 (last visited May 13, 2024). The Court further understands that a nerve conduction study "is a test that can help diagnose issues with . . . peripheral nerves, such as peripheral neuropathy and nerve compression syndromes." Cleveland Clinic, *Nerve Conduction Study*, https://my.clevelandclinic.org/health/treatments/24821-nerve-conduction-study (last visited May 13, 2024).

Dr. Savino visited with Mr. Salinas on July 9, 2021. Dkt. 49-1 at 30–32. On July 12, she requested approval for the electromyogram and nerve conduction study. *Id.* at 33–35. Dr. Mitcheff approved the request on July 14. *Id.* at 40. Dr. Larry Blankenship, a neurophysiologist, performed the tests on July 29 and found "[s]evere axonotmesis of the radial nerve." *Id.* at 42. The Court understands this to mean that the nerve cells connecting Mr. Salinas's upper arm to his hand were interrupted. *See* Cleveland Clinic, *Radial Nerve*, https://my.clevelandclinic.org/health/body/21617-radial-nerve (last visited May 13, 2024); St. Louis Children's Hospital, *Classification of Nerve Injuries*,

4

https://www.stlouischildrens.org/conditions-treatments/neurosurgery-services/brachial-plexus-center/overview/classification-nerve-injuries (last visited May 15, 2024). However, there was "evidence of continuity of the radial nerve," suggesting his condition could be improved with surgery. Dkt. 49-1 at 42; dkt. 49-3 at 7, 11, 23:6–17, 41:8–18. According to Mr. Salinas, Dr. Blankenship stated that he needed an additional surgery that should have been performed in 2018, and the delay would limit the chances of a successful outcome. *Id.*, 25:3–17.

Dr. Savino had no interaction with Mr. Salinas after his diagnostic testing and left her position at CIF on August 13, 2021. Dkt. 49-2 at ¶ 11. Mr. Salinas underwent surgery in 2022. Dkt. 49-3 at 8, 27:21–23. He has regained only limited use of his hand. *Id.* at 13, 47:25–49:1.

### III. Analysis

Mr. Salinas is suing Dr. Savino under 42 U.S.C. § 1983 for violating his Eighth Amendment rights. Dkt. 13 at 2–3 (screening order). The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials"—and private actors like Dr. Savino who contract to treat prisoners—"can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Dr. Savino does not dispute that Mr. Salinas's arm injury was objectively serious. Rather, she argues that she was not deliberately indifferent to his condition. She is entitled to summary judgment unless the record would allow a reasonable trier of fact to conclude that she "consciously disregarded a serious risk to [Mr. Salinas]'s health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Salinas "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted).

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

Dr. Savino argues that she is entitled to summary judgment because she provided "adequate and appropriate" care during the three-month period she was involved in his treatment. Dkt. 48 at 6–7. The undisputed record supports her argument.

6

Because Mr. Salinas is suing Dr. Savino for damages under § 1983,[2] she can be liable only for her own actions or failures to act—not for others'. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) ("[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation.") (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation . . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). No evidence indicates that Dr. Savino was personally involved in Mr. Salinas's medical care before May 17 or after August 13, 2021. Therefore, the question of deliberate indifference is limited to her acts and omissions during that three-month period.

The record does not support a finding that Dr. Savino caused an inexplicable delay in treatment. *Petties*, 836 F.3d at 730. The fact that Dr. Savino repeatedly submitted requests to arrange diagnostic testing to Dr. Mitcheff indicates that she lacked authority to arrange diagnostic testing, surgery, or other specialized, offsite treatment on her own—and Mr. Salinas offers no contrary evidence. In three months, Dr. Savino submitted four requests seeking approval of specialized treatment, and she submitted those requests without delay.

Dr. Savino submitted her first request the day after her initial appointment with Mr. Salinas. After Dr. Mitcheff deferred the first request, Dr. Savino completed a follow-up appointment within three weeks, then obtained medical records and resubmitted her request within a week. When Dr. Mitcheff rejected the second request, Dr. Savino revised and resubmitted it within days. And,

---

[2] Any claim for injunctive relief against Dr. Savino fails because her employment at Mr. Salinas's prison—and therefore her ability to provide him any medical care—ended before this suit began. *See, e.g.*, *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (The proper defendant for an injunctive relief claim is the person who "would be responsible for ensuring that any injunctive relief is carried out.").

when Dr. Mitcheff rejected the third request, Dr. Savino arranged another appointment with Mr. Salinas, obtained his consent to a different procedure, and submitted a new (and ultimately successful) request within three weeks. Particularly in the context of correctional medical care, these timelines are not unreasonable.

Perhaps Mr. Salinas would have received testing and surgery more promptly if Dr. Savino had begun by requesting an electromyogram and nerve conduction study instead of an MRI. But Mr. Salinas does not make this argument, and, in any event, no evidence in the record supports an inference that Dr. Savino's decision to begin by requesting an MRI was such a departure from accepted professional standards that it was not based on medical judgment. *Petties*, 836 F.3d at 729.[3]

In sum, no evidence would allow a reasonable jury to conclude that Dr. Savino caused an inexplicable delay in Mr. Salinas's testing or surgery. To the extent such a delay occurred during Dr. Savino's involvement in Mr. Salinas's care, the record suggests it was attributable to Dr. Mitcheff's repeated deferrals or the authorization protocol for imaging and surgeries rather than a lack of diligence by Dr. Savino.

The record also does not support a finding that Dr. Savino ignored or refused to take instructions from a specialist. *Petties*, 836 F.3d at 729. She had no awareness of Mr. Salinas's condition until May 18, 2021, and she did not have access to his pre-incarceration medical records until after June 11, 2021. At that point, she was already deep in the process of trying to arrange specialized care for Mr. Salinas.

---

[3] Mr. Salinas offers no evidence to support his unelaborated assertion that Dr. Savino "substantially departed from accepted professional judgment practice or standards," dkt. 60 at 2, and therefore has not raised a material factual dispute. "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up).

Finally, no evidence supports a finding that Dr. Savino persisted in a course of treatment she knew was ineffective or that she simply chose the path of least resistance. Rather, Dr. Savino persisted in attempting to arrange diagnostic testing that would lead to resolution of Mr. Salinas's condition, as she prepared, revised, and submitted four requests in three months.

Mr. Salinas contends in response to the summary judgment motion that Dr. Savino advised him during one appointment to lose weight in an effort to alleviate his condition, and he argues that her remark was "inappropriate" and not likely to improve the function of his arm and hand. Dkt. 60 at 2. But "an inmate is not constitutionally entitled to a warm bedside manner." *Karraker v. Kankakee Cnty. Sheriff's Dep't*, 65 F.3d 170 (7th Cir. 1995) (unpublished). Dr. Savino undertook reasonable efforts to obtain proper treatment for Mr. Salinas's condition; a remark about Mr. Salinas's weight does not nullify those efforts or independently violate the Eighth Amendment.

### IV. Conclusion

Dr. Savino's motion for summary judgment, dkt. [47], is **granted**. This action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** consistent with this order and the screening order, dkt. 13.

**IT IS SO ORDERED.**

Date:   5/20/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

9

Distribution:

REYNALDO SALINAS, JR.
205625
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Travis W. Montgomery
Bleeke Dillon Crandall, P.C.
travis@bleekedilloncrandall.com